## CITIZENS & SOUTHERN NAT. BANK v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10616.

Circuit Court of Appeals, Fifth Circuit.

June 15, 1943.

William C. Turpin, Jr., and Charles J. Bloch, both of Macon, Ga., for petitioner.

Joseph M. Jones, Sewall Key, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Rollin H. Transue, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before HUTCHESON, HOLMES, and WALLER, Circuit Judges.

HOLMES, Circuit Judge.

The petitioner, as trustee of a trust estate created by the will of Emanuel Ulman, upon the death of the testator, became the titular owner of 100 shares of common stock in the Coca-Cola International Corporation. Being of the opinion that such stock was not an investment available to a trustee under the laws of Georgia, where the trust had its situs, negotiations were entered upon to convert the stock into cash. On September 5, 1936, a brokerage firm was employed to sell the stock, but its value per share was so great that no purchasers were readily found. Consequently, the trustee exchanged the 100 shares for 800 shares of common stock in the Coca-Cola Company, and sold the 800 shares thus acquired. Our problem is to determine the tax consequences of the transaction whereby the exchange was effected.

The Coca-Cola International Corporation was a holding company organized in 1922 by holders of a majority of the common stock of the Coca-Cola Company. Originally, one share of International stock was equivalent to one share of Coca-Cola stock, but successive stock dividends by the Coca-Cola Company while the stock of International remained constant caused one share of International to be the equivalent of eight shares of Coca-Cola when the exchange in question was effected. In 1926 International passed an irrevocable resolution providing that its stockholders might at any time surrender the capital stock of International to it and receive in exchange shares of Coca-Cola stock of an equivalent value, and that the International stock so surrendered should be retired and cancelled. The exchange was made pursuant to the resolution, and the 100 shares of International stock were retired and cancelled.

The 800 shares of Coca-Cola stock had a market value on the date of the exchange of $96,926.02, which was a gain of $67,551.02 over the adjusted basis of the International shares. Petitioner contends that, since its sole purpose was to sell for cash its trust holdings of International stock, and since the exchange was effected only to facilitate that sale, the exchange and sale were in substance but one transaction for tax purposes, i.e., a sale of International stock; and that, under the long-term-capital-gains statute, only 40% of the recognized gain of $67,551.02 was subject to tax. The Board of Tax Appeals sustained the Commissioner's view that the exchange was a transaction too substantial to be overlooked, that its consummation under the resolution resulted in a distribution in partial liquidation of the International Corporation and that 100% of the gain was taxable under Section 115(c) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 868.

In two recent decisions, in cases involving exchanges of stock under the resolution here involved, the court has set at rest each issue here presented. In Dodd v. Commissioner, 5 Cir., 131 F.2d 382, and Woodruff v. Commissioner, 5 Cir., 131 F. 2d 429, we held that such exchanges were in fact distributions in partial liquidation and possessed substance for tax purposes irrespective of the intent and purpose of the taxpayer in negotiating the exchange. On the authority of these decisions, the

decision of the Board of Tax Appeals is affirmed.

WALLER, Circuit Judge (dissenting).

The exchange of stock was not made by the trustee with any idea of aiding the Coca-Cola International Corporation to liquidate but was done solely for the purpose of enabling the trustee to comply with the requirements of the Georgia law. In substance, the trustee, desiring to sell International stock, and finding that it could not, swapped it for something it could sell, and thereby disposed of a capital asset. The fact that Coca-Cola International was liquidating was purely incidental. The transaction, in fact, purpose, and substance, was a sale of a capital asset and not an exchange in aid of, or in contemplation of, liquidation. The entire purpose of the transaction was to permit the trustee to dispose of a capital asset which it was illegal for it to hold under the Georgia law. I am unwilling to substitute form for substance when to do so penalizes one who is merely undertaking in good faith to comply with the state law. The Coca-Cola common stock was bought by the agent, in the name of the agent, and sold by the agent, all as a means of selling Coca-Cola International stock. It was illegal, under the Georgia law, for the trustee to buy the Coca-Cola common stock to the same extent as it was illegal for it to hold the International stock. The purchase by the trustee of the Coca-Cola stock appears to be void as against the public policy of the State of Georgia. Certainly the trustee was not undertaking to buy Coca-Cola common stock. It was undertaking to sell Coca-Cola International stock. I consider the acquisition of the Coca-Cola common stock an incident only to the sale of the Coca-Cola International stock—the means to an end.

The case is distinguishable from Dodd v. Commissioner, 5 Cir., 131 F.2d 382, because in that case Dodd "voluntarily" entered into the agreement. In the instant case the taxpayer was compelled by Georgia law to sell. Dodd was not required by law to sell. In the Dodd case the Coca-Cola common stock was in turn sold to the Coca-Cola Company and the opinion states that Dodd "intended and expected that this would be done."

In Woodruff v. Commissioner, 5 Cir., 131 F.2d 429, 430, there was no element of legal compulsion involved. The taxpayer dealt directly with International and received Coca-Cola stock. The exchange of stock and the disposition of the Coca-Cola common stock were not parts of a single transaction as in the present case. The Court in the Woodruff case, however, used language which I thoroughly approve. It said:

"It is true that the tax consequences of a transaction depend upon the substance of the transaction rather than the mechanics by which it is executed * * *."

The Court added that it is also true that if a taxpayer has two legal methods by which he may attain a desired result, the method pursued is determinative for tax purposes. In the present case the taxpayer apparently had no choice. It was required by the Georgia law to sell and the only way he could bring it about was the method pursued.

It clearly seems to me that this is a case in which we should look to the "substance of the transaction rather than the mechanics by which it was executed".