YANKEY et al. v. COMMISSIONER OF INTERNAL REVENUE.

BRADFORD'S ESTATE v. SAME.
HELLING v. SAME (two cases).

BRADFORD v. SAME.
Nos. 3164–3168.

Circuit Court of Appeals, Tenth Circuit.
Oct. 27, 1945.

Chas. G. Yankey, Harvey C. Osborne, J. G. Sears, Jr., and Verne M. Laing, all of Wichita, Kan., for petitioners.

Rigmor O. Carlsen, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty.

Gen., and Sewall Key and Robert N. Anderson, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

The question presented for determination is whether the gain derived by petitioners respectively in connection with the surrender of certain shares of preferred stock was taxable under section 115(c) and (i) of the Revenue Act of 1936, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Acts, pages 868, 871, on the basis of one hundred per cent of the gain realized, or under section 117 (a) on the basis of a fixed proportion of the gain.

The facts are not in issue. El Dorado Refining Company, a corporation organized under the laws of Delaware, was in default on its debenture notes. A noteholders' committee was formed, the maturity of the indebtedness was extended, and a new note secured by a mortgage on the property of the corporation was accepted. Default was made in the payment of the new note, the mortgage was foreclosed, the property was sold, and the noteholders through the committee became the purchasers. El Dorado Refining Company, a corporation organized under the laws of Kansas, was formed·for the purpose of operating the property acquired at the foreclosure sale. The new corporation issued 6380 shares of preferred stock and 3190 shares of common. According to plan, stock was exchanged for the debt of the predecessor corporation on the basis of one share of preferred and one-half share of common for each one hundred dollars of the debt. The balance of the indebtedness not exchanged for stock was adjusted by cash payment in the amount represented by the sale price in the foreclosure action. In addition, 11,140 shares of common stock were issued to a group of persons who agreed and undertook to operate the company.

The charter of the corporation provided that annually, after payment of expenses and all dividends upon preferred and common stock, a portion of the corporate earnings should be paid to a sinking fund trustee; that with such funds, the trustee should offer to buy outstanding preferred stock at not more than $100 per share; that the stock acquired in that manner should be transferred into the name of the trustee; that the trustee should receive dividends the same as other owners of preferred stock, which dividends should be used to acquire additional preferred stock; that if the preferred stock could not be purchased at $100 per share or less, the funds were to be used by the trustee for the retirement of preferred stock by call, at $100 per share; that any part of the preferred stock could be redeemed by the corporation through the trustee by the deposit of $100 per share, plus any unpaid dividends; that the shares acquired by purchase or redemption could not be reissued; and that as soon as all outstanding shares had been acquired by the trustee, they should be cancelled. The trustee acquired preferred stock from time to time under these provisions of the charter, some by purchase and some by call. The corporation deposited with the trustee the funds for that purpose. The petitioners acquired preferred stock at various times from 1937 to 1940, and in 1939 or 1940 each surrendered his stock to the trustee for retirement. All of the preferred stock was formally cancelled in 1940.

In their separate income tax returns for the years in which stock was surrendered, the petitioners treated the gain received upon the stock as capital gain, taxable under section 117(a), supra. The Commissioner treated the gain as income derived from a partial liquidation of the corporation, taxable under section 115(c) and (i), supra, and imposed resulting deficiencies. The Tax Court sustained the action of the Commissioner, and the proceedings are here on review.

Subdivision (c) of section 115, supra, provides that amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock; that amounts distributed in partial liquidation shall be treated as in part or full payment in exchange for the stock; that the gain or loss to the distributee shall be determined under section 111, but shall be recognized only to the extent provided in section 112; and that despite the provisions of section 117(a), one hundred per cent of the gain so recognized shall be taken into account in computing net income, except in the case of amounts distributed in complete liquidation of the corporation. Subdivision (i) provides that for the purpose of the section amounts distributed in partial liquidation means a distribution by a corporation in complete cancellation or redemption of a part of its

stock, or one of a series of distributions in complete cancellation or redemption of all or part of its stock. And section 117(a) provides that in the case of a taxpayer, other than a corporation, only certain percentages of gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income, the percentages depending upon the time the taxpayer has held the capital asset.

 It is the contention of petitioners that the net gain derived upon the surrender of the preferred stock in the manner outlined was taxable as capital gain under section 117(a). The charter of the corporation made provision for the retirement of the preferred stock, by purchase or call for that purpose. The charter further provided that shares acquired by the corporation for that purpose should not be-reissued, and that when all outstanding stock had been acquired it should be cancelled. The stock of petitioners was acquired under these provisions of the charter for cancellation. And transactions of that kind constitute partial liquidation of the corporation, within the meaning of section 115. Hammans v. Commissioner, 2 Cir., 121 F.2d 4; Amelia H. Cohen Trust v. Commissioner, 3 Cir., 121 F.2d 689; Hill v. Commissioner, 5 Cir., 126 F.2d 570; Dodd v. Commissioner, 5 Cir., 131 F.2d 382.

 But petitioners argue with emphasis that here the preferred stock was issued in payment or adjustment of a debt of the predecessor corporation; that the stock was to be retired out of earnings; that its retirement did not bring about a reduction of the capital invested or in the invested assets; that in retiring the stock it was not intended to curtail the normal operations of the corporation; and that the retirement of the stock in these circumstances did not amount to a partial liquidation of the corporation. Section 115 blueprints in clear terms its own definition of a partial liquidation. And by command of the statute, a distribution of funds of a corporation in complete retirement of a part of its stock, or one of a series of distribution in complete retirement of all or part of its stock, constitutes a partial liquidation for the purpose of measuring taxable gain of the owner of the stock. Malone v. Commissioner, 5 Cir., 128 F.2d 967.

 The acquisition of the stock in the manner outlined for retirement or cancellation was nonetheless a partial liquidation even though the corporation did not contemplate curtailing or winding up its normal operations. Commissioner v. Cordingley, 1 Cir., 78 F.2d 118; Commissioner v. Quackenbos, 2 Cir., 78 F.2d 156. And the motives of the corporation or of the petitioners are immaterial as the effect of the transactions must be determined by their substance, not the motives entering into them. Jones v. Dawson, 10 Cir., 148 F.2d 87.

 The stock was not finally cancelled by formal corporate action immediately after being acquired for that purpose. But it was acquired in an authorized manner solely for retirement and it could not be reissued or resold. So far as the computation of the net income of the petitioners is concerned, the redemption of the stock in partial liquidation of the corporation became complete when the stock was acquired for that purpose. Amelia H. Cohen Trust v. Commissioner, supra; Fry v. Helvering, 2 Cir., 128 F.2d 737.

The decisions of the Tax Court are severally affirmed.